RODGERS, Justice:
This appeal is from a judgment of the Circuit Court of Newton County in which the case was submitted to the trial court on stipulated facts. It arose from the levy of execution issued at the request of the appellee, a judgment creditor of Mrs. Myrtle W. Parks, upon six automobiles in her possession.
A résumé of the stipulated facts follows. Parks Auto Sales in Newton, Mississippi was owned and operated by T. C. Parks, husband of Mrs. Myrtle W. Parks. There appear of record in the Chancery Clerk’s Office of Newton County several instruments, each of which is what is known as a “Statement of Trust Receipt Financing.” One of these instruments was filed in each year consecutively from 1961 through 1964. Each was signed by the appellant, Murdock Acceptance Corporation, as “entruster” and by Parks Auto Sales by T. C. Parks as “trustee.”
The appellee, Mrs. Maymie Woodham, obtained a judgment against T. C. Parks and Mrs. T. C. Parks, and this judgment was enrolled September IS, 1964. On December 29, 1964, another financing statement was executed by the appellant and T. C. Parks and filed of record January 7, 1965. This instrument, as were all the previous ones, was indexed under Murdock’s name rather than Parks’. Mr. Parks died intestate July 11, 1965, and no administration was had on his estate. Mrs. Parks, without any change in the appearance of the business, took possession and control of “Parks Auto Sales,” thereafter converted all property to her own use, and operated the business under the same name, even though there was no administration of the estate of T. C. Parks, sole owner of the auto agency.
Mrs. Parks, on August 16, 1965, executed a power of attorney naming two of Mur-dock’s employees as attorneys in fact for “Parks Auto Sales,” and granting them the power of attorney to execute in favor of Murdock trust receipts and notes covering motor vehicles delivered to Mrs. Parks. She delivered this power of attorney to Murdock Acceptance Corporation. One of these attorneys in fact, Adelyn W. Farr, executed a trust receipt on September 28, 1965, naming Murdock as “entruster” and Parks Auto Sales as “trustee.” This trust receipt covered three of the automobiles upon which levy was made. A similar instrument was executed October 23, 1965, which included the other three automobiles involved in this controversy. Several other like instruments were executed and appear in the record, but they are not of material importance other than to indicate the manner of financing used by the parties. None of the trust receipts was recorded.
On December 14, 1965, a writ of execution on the appellee’s enrolled judgment was issued at the request of the appellee. At nine o’clock the following morning, December 15, a statement of financing was filed naming Murdock as entruster and “Parks Auto Sales by Mrs. Myrtle W. Parks” as trustee. At eleven o’clock that same morning, the sheriff of Newton County, acting under the writ of execution, advised Mrs. Parks that he was making levy of execution on the six automobiles involved. He did not take possession of the vehicles nor place any sort of notice on them, but he did advise Mrs. Parks not to dispose of them in any manner.
This case involves the right of Murdock Acceptance Corporation to claim the automobiles levied upon by virtue of the financing statements of record, which, it is contended, give Murdock prior right, title, and claim to the automobiles. The trial court’s judgment was in favor of the judgment creditor, Mrs. Woodham.
It is apparent that Parks Auto Sales and Murdock Acceptance Corporation were *58 engaged in trust receipt financing, more commonly known as “floor planning.” This method involves a secured transaction by which the borrower (designated as “trustee”) signs a statement to the effect that he will hold the goods given into his possession in trust for the lender (designated as the “entruster”) and shall have the right to dispose of them to others for the sole purpose of repaying the loan. This statement is known as a trust receipt. As a security device in sales financing, the trust receipt has become widely used in financing dealer purchases of everything from automobiles to appliances.
I.
The law applicable to trust receipts financing has been modified and compiled by the Uniform Trust Receipts Act. Under the common law, the entruster’s security interest was protected against all but an innocent purchaser without recording a document evidencing this interest. To avoid the problem of having “secret liens,” the Uniform Trust Receipts Act requires a notice or statement to be filed with the proper authority. Each trust receipt for each separate transaction is not required to be filed due to the burden and expense which would be imposed on the financing party. The law permits one statement filed in accordance with the act to do for all trust receipt transactions covering the goods described in the statement between the entruster and the trustee entered into during a period from thirty days preceding the filing to one year following the date of filing. In other words, the recorded statement is notice that the parties are engaged In this method of financing the purchase of the particular goods. The entruster’s security interest in goods which are the subject of a trust receipt transaction during a year following the filing of the statement is protected against all but a buyer in the ordinary course of trade. The security interest in goods subject to a trust receipt is also protected for a period of thirty days without a statement being filed. After this thirty day period has passed without a statement having been filed, the security interest of the entruster is void against a creditor who then acquires a lien by levy, provided the creditor had no actual knowledge of entruster’s interest. See Uniform Trust Receipts Act, 9C U.L.A. (1957).
Mississippi adopted the Uniform Trust Receipts Act in 1950. Miss.Laws 1950, ch. 331. It appears in the Code as sections 5080-01 to 5080-23, Mississippi Code 1942 Annotated (1956).
Appellee points out that the statements of financing filed in the chancery clerk’s office were allegedly improperly indexed under the name of the finance company, Murdock Acceptance Corporation, rather than under the name of the dealer, Parks, and therefore did not constitute notice to her. However, section 5080-13(4) states that “ [presentation for filing of the statement * * * and payment of the filing fee, shall constitute filing under this act * * The statements were presented and the filing fees were paid. The statements were recorded; and, although the clerk improperly indexed the instruments, constructive notice to the ap-pellee was implied. It is also the rule in this state as announced by this Court that one may “safely repose on the presumption that the recording officer has done his duty” and is under no duty to see that an instrument is properly recorded. Bank of Lexington v. Cooper, 115 Miss. 782, 76 So. 659 (1917).
The filing of the financing statement by appellant on December 15, 1965, did not protect Murdock Acceptance Corporation’s interest in the automobiles which were subject to the trust receipts dated September 28 and October 23 of that year, unless it can be said that the filing of that statement occurred prior to appellee’s becoming a lien creditor. § 5080-07, Miss.Code 1942 Ann. (1956). Appellant contends that ap-pellee did not actually become a lien creditor until eleven o’clock on the morning of December 15 and the proof shows the *59 statement of financing was filed at nine o’clock that same morning. However, the record also shows that appellee secured the issuance of process on December 14. Section 5080-08(2) (a) provides as follows:
“Where a creditor secures the issuance of process which within a reasonable time after such issuance results in attachment of a levy on the goods, he is deemed to have become a lien creditor as of the date of the 'issuance of the process.” (Emphasis added.)
The appellee requested the issuance of process the day before filing occurred; therefore, if there were a valid attachment or levy on the automobiles, this section would operate to place the appellee within the' provisions of section 5080-08.
Appellant contends that the levy of execution was not valid, because the sheriff did not take possession of the goods as required by section 1905 of the Code. In the case of Industries Sales Corporation v. Reliance Manufacturing Company, 243 Miss. 463, 138 So.2d 484 (1962), which also involved a trust receipt financing arrangement, this Court held that constructive possession was sufficient.
“In this instance the officer took down the serial or model numbers of the property, and left it in the possession of the trustee, H & S, through Habeeb. In order for there to be a valid levy, the officer must assume dominion and control over the property, but the seizure may be either actual or constructive. An officer levying an execution on chattels is not required to physically take them with him, if he reduces them to his possession and control. The levy is not vitiated by leaving the chattels in the possession of the debtor.” Id. at 467, 138 So.2d at 486.
In the instant case, the sheriff took the motor serial numbers of the automobiles and advised Mrs. Parks not to sell or dispose of them in any manner. He took constructive possession of the automobiles. Therefore the levy of execution was valid.
Appellee became a lien creditor on December 14; and thus the financing statement filed December 15, 1965, is ineffectual to protect appellant’s security interest in the particular automobiles.
II.
The next question to consider is the legal effect of the financing statement filed January 7, 1965. This,statement was signed “Parks Auto Sales by T. C. Parks.” The question here is whether or not this statement operates to protect appellant’s interest in goods delivered to Parks Auto Sales after Mr. Parks died and Mrs. Parks, without authority, took complete possession and control of the business.
Section 5080-13 requires that the statement be signed by the “entruster and the trustee.” The automobiles upon which levy of execution was made were delivered to Parks Auto Sales by virtue of instruments executed through a power of attorney. The instrument conferring the power of attorney granted the power to act for “Myrtle W. Parks, doing business as Parks Auto Sales.” Any instruments executed by the attorney in fact were in the name of Mrs. Parks, and goods delivered under these trust receipts were delivered to her as trustee. There was no statement of trust receipt financing of record signed by Mrs. Parks as trustee which would be effective to protect the appellant’s security interest in the automobiles delivered during the months of September and October. The transactions made by Mrs. Parks were done in her own name and for her benefit and were under no authority granted by her husband.
III.
Appellant contends that Mrs. Parks’ acts rendered her the executrix de son tort of her husband’s estate; thus the execution *60 by her of the trust receipts was in furtherance of and in fulfillment of his contractual obligation. Accordingly, it is argued, the automobiles delivered to Mrs. Parks were covered by the statement signed by Mr. Parks and filed approximately nine to ten months preceding their delivery. Such an argument cannot be sustained. The office of executor de son tort is defined as:
“[O]ne who, without authority from the deceased or the court of probate, assumes, by interference with the estate of the deceased, to act as executor or administrator and performs such acts with respect to the personalty of that estate as can legally be done only by a properly appointed executor or administrator.” 21 Am.Jur. Executors and Administrators § 82S (1939).
But, as indicated by the term itself (which means executor in his own wrong) such an office is implied only for the purpose of this intermeddler’s being sued or made liable for the assets with which he has inter-meddled. Id. at 837. See § 617, Miss.Code 1942 Ann. (1956); Holmes v. Holmes, 154 Miss. 713, 123 So. 865 (1929); 34 C.J.S. Executors and Administrators § 1063.
IV.
Appellant next argues that section 337 of Mississippi Code 1942 Annotated (1956) creates a purchase-money lien on the automobiles which is prior to any lien created by the levy of execution by a judgment creditor. This section is as follows:
“The vendor of personal property shall have a lien thereon for the purchase-money while it remains in the hands of the first purchaser, or of one deriving title or possession through him, with notice that the purchase-money was unpaid.”
Appellant contends that this purchase-money lien is superior to that acquired by the appellee and cites Trenton Lumber Company v. Boling, 230 Miss. 233, 92 So.2d 440 (1957). In that case, this Court held that a vendor’s lien was superior to a lien created by a deed of trust on after acquired property. There, the question decided by this Court was the priority between a vendor’s lien created by section 337 over a lien created by section 851, Mississippi Code 1942 Annotated (1956) which provides that a chattel mortgage or deed of trust on after acquired property executed in conformity with that act “shall be a valid lien against all creditors of the grantor.” There is nothing in the wording of either of these statutes which indicates priority with respect to other liens; but this Court held, in accordance with the apparent policy and intent of the legislature as applied to the facts in that case, that the vendor’s lien was superior to the lien of the grantee of the deed of trust. Id. at 244, 92 So.2d at 444.
In the instant case, Murdock Acceptance Corporation had a purchase-money lien by operation of section 337; however, it is the opinion of this Court that such lien became subordinate to that of the appellee by virtue of the application of the Trust Receipts Act. This Act, passed by our legislature in 1950, clearly provides that such an interest as Murdock Acceptance Corporation had can be defeated. Section 5080-08(2) is as follows:
“Save as provided in subsection 1, the entruster’s security interest shall be void as against lien creditors who become such after such thirty day period and without notice of such interest and before filing.”
Here the appellant and Mrs. Parks chose to do business under the method provided for in the Uniform Trust Receipts Act, under which the interest of the appellant can be defeated. The appellee became a lien creditor without notice of the appellant’s interest after the thirty day period allowed for filing and before actual filing was done. Those facts are clearly within section 5080-08(2). By not having filed a statement of financing within the thirty day period, the appellant’s interest became *61 void when the appellee without notice became a lien creditor. See Industries Sales Corp. v. Reliance Mfg. Co., 243 Miss. 463, 138 So.2d 484 (1962).
In passing, it might be pointed out that were appellant’s contention correct, the effect and applicability of the Uniform Trust Receipts Act would be nil; for if the person who provides purchase money under a trust receipt arrangement were not to comply with the provisions of the act to protect his interest, he could always fall back on the purchase-money lien statute. This in itself would defeat the apparent purpose and intent of the legislature in passing the Uniform Trust Receipts Act. Parenthetically, it might be added that the legislature has repealed section 337 in favor of the Uniform Commericial Code, Mississippi Laws 1966 chapter 316, which is soon to go into effect in this state. Under Article 9 of the Uniform Commercial Code, the mechanics for protecting a security interest in personal property are generally similar to the method provided for in the Uniform Trust Receipts Act, which, of course, is also repealed.
From our study of the foregoing facts and authorities, we are of the opinion that the trial judge was correct and that the judgment of the Circuit Court of Newton County should be, and it is, hereby affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, BRADY and SMITH, JJ., concur.